O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS G. LAWRENCE, | ) | CASE NO. ED CV 10-01296 RZ |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

An applicant for Social Security disability payments who is not working and who has a severe impairment is deemed disabled if he meets one of the listed impairments found in 20 C.F.R., Part 404, Appendix I. *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1996). Plaintiff Thomas G. Lawrence contends that he met Listing 12.05, mental retardation. Although Plaintiff asserted that Listing 12.05 applied [AR 28], the Administrative law Judge did not address this Listing. Under the circumstances of this case, this was error. While an administrative law judge is not required to state precisely why particular elements of a Listing have not been met, *Gonzalez v Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990), he is required to consider all applicable Listings. *Burnett v. Commissioner*, 220 F.3d 112, 119-20 (3d Cir. 2000); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Although the Administrative Law Judge did not refer specifically to Listing 12.05, however, he did make findings that pertain to this Listing, and thus there is a record to review. As pertinent here, Listing 12.05 provides as follows:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;
>
> . . .

There are two basic components to this listing, the IQ score and the presence of a physical or mental impairment. Although the Administrative Law Judge did not address this Listing, he did address both of the Listing's requirements. As to the first of these requirements, concerning a valid IQ of between 60 and 70, Plaintiff took an IQ test on the Wechsler Adult Intelligence Scale. On that test, Plaintiff had a Verbal IQ of 65, a Performance IQ of 63, and a Full Scale IQ of 61. [AR 310-11] All of these numbers would have satisfied the first prong of the listing, requiring an IQ score of between 60 and 70 on any one of the scales. The Administrative Law Judge, however, stated that he placed "minimal reliance" on this testing "because the scores obtained are not reflective of actual cognitive ability" and were inconsistent with Plaintiff's having achieved certain grades in high school and community college. The Administrative Law Judge found it "difficult to

believe" that the community college would waste its time and scarce resources in teaching Plaintiff automotive repair if such was beyond his capacity. [AR 16]

       The Administrative Law Judge wrongly evaluated the IQ scores. There was no evidence that the IQ test did not validly measure Plaintiff's IQ or, stated another way, no evidence that the IQ tests were not, in the Administrative Law Judge's words, "reflective of actual cognitive ability." The Administrative Law Judge may have discretion to reject the IQ scores if there are external reasons for believing that the scores are not valid, since the regulation requires a "valid IQ," but that was not the case here. A valid IQ *test* measures what it is supposed to measure, 20 C.F.R. Part 404, Subpart P, Appx. 1 at 12.00(D)(5)(c)(1). Thus, when Listing 12.05(C) refers to a "valid IQ," it refers to a score that properly results from a valid test. Likewise, for the result not to be valid, there must be some reason that the valid test produced a wrong result. Thus, for example, where an applicant had not eaten for two days prior to the administration of the test, had been drinking until two a.m. the night before the test, and the doctor administering the test thought these factors might have lowered the score, the Administrative Law Judge properly found the IQ score not valid, supplemented by other factors as well. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Here, however, the administering psychologist did not suggest that the scores themselves were *invalid*. In fact, the administering psychologist also administered a test to determine if Plaintiff were malingering, and concluded that "he is not attempting to simulate cognitive impairment." [AR 311] While the treating psychologist expressed surprise that Plaintiff could function as well as he could in certain areas, and that he could pass *other* parts of the psychological examination given his IQ score, there was no basis for saying that the IQ tests wrongly measured Plaintiff's cognitive ability.

       There was some evidence, however, that Plaintiff had the capability to do certain things, such as pass special education courses in high school and certain courses in community college. That information does not affect the validity of the IQ score. The ability to function differs from the person's intellectual ability as measured by the IQ test.

Thus, even if a person has the present capability to perform past relevant work (but is not working at the time of the application), this would not gainsay the fact that the IQ score placed the person within the Listing. *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984).

In short, the Administrative Law Judge had no lawful basis for saying that the IQ scores did not accurately measure Plaintiff's cognitive ability.

The second prong of Listing 12.05(C) is that the claimant must have, in addition to the low IQ score, "a physical or other mental impairment imposing an additional and significant work-related limitation or function." Here, the comments of the Administrative Law Judge as to Plaintiff's having passed special education classes and certain community college classes in automotive repair, on their face, seem more pertinent. However, this prong of the Listing in fact refers to something else. In *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987), the Court of Appeals defined what this prong means:

> We have not had prior occasion to interpret the second prong of section 12.05(C). Other circuits have concluded that an impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal. . . . We agree and adopt this standard.

(Citations omitted). While subsequent adjustment to the regulations may mean that something more is required than a "slight or minimal" effect on a claimant's ability to perform basic work activities, nevertheless a finding of an impairment at Step Two of the sequential evaluation necessarily satisfies the second prong of § 12.05(C); *Fanning,* 827 F.2d at 633 n.3; *Rhein v. Astrue*, 2010 WL 4877796 at *10 (E.D. Cal. 2010).

The Administrative Law Judge here found that Plaintiff had two severe impairments, cerebral palsy and depression. [AR 14] These findings were made at Step

two of the process, and are independent of Plaintiff's intellectual capacity as measured by the IQ test. Therefore, the second prong of the Listing also was satisfied.

In this Court, the Commissioner argues that Plaintiff did not satisfy the preamble to the listing. The preamble, however, does not impose additional requirements other than the requirement that the mental retardation have manifested itself before the claimant turned 22. If it is accepted that Plaintiff *had* mental retardation, he clearly had so before he was 22; the IQ test referred to above took place when Plaintiff was eighteen. In addition, an IQ test taken when Plaintiff was nine also showed mental retardation. [AR 384] There can be no legitimate dispute that the symptoms were present at the time required by the regulations.

Since it is clear on the record that Plaintiff met Listing 12.05, nothing is to be gained by sending this matter back to the agency for further hearing. The Court's disposition of this matter makes it unnecessary to consider other errors claimed by Plaintiff. The decision of the Commissioner is reversed, and the matter is remanded to the Commissioner for the awarding of benefits.[1]

IT IS SO ORDERED.

DATED: September 2, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE

---

[1] Without explanation, the Administrative Law Judge also ruled that Plaintiff did not meet Listing 11.07. [AR 14] Under that Listing, a person with cerebral palsy who has an IQ of 70 or less (the regulation does not even say "valid IQ") is disabled. Since the Administrative Law Judge found that Plaintiff has cerebral palsy and the record establishes an IQ of less than 70, it appears that Plaintiff would satisfy this Listing also. However, Plaintiff does not raise the point to this Court, and so the Court does not make a ruling based on it.